IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| NATHAN LYNCH, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> MOUNT VERNON FIRE INSURANCE ) <br> COMPANY, ) <br> ) <br> Defendant. ) <br> ) | No. 2:23-cv-02086-DCN <br><br> **ORDER** |

The following matter is before the court on defendant Mount Vernon Fire Insurance Company's ("Mount Vernon") motion to dismiss, ECF No. 6. For the reasons set forth below, the court grants the motion.

## I.  BACKGROUND

This case arises from an insurance coverage dispute in which plaintiff Nathan Lynch ("Lynch") seeks to collect on a judgment obtained against a non-party to whom Mount Vernon issued a liquor liability insurance policy (the "Policy"). On January 8, 2020, Tyler Schiano ("Schiano") was overserved alcohol at an establishment known as Taco Loco Cantina. ECF No. 1, Compl. ¶ 3. After leaving Taco Loco Cantina, Schiano drove in an easterly direction on North Rhett Avenue in North Charleston and slammed into a vehicle in which Lynch was a passenger, causing severe and permanent injuries. Id. ¶ 4.

Lynch filed a dram-shop action in South Carolina state court against Taco Loco, LLC and Taco Loco, LLC d/b/a Taco Loco Cantina (the "state court action") alleging negligence, negligence per se, and violation of South Carolina Code sections 61-4-580

1

and 61-6-2220. Id. ¶ 6; see also ECF No. 1-3, Lynch v. Schiano, Case No. 2021-CP-0800168 (Berkeley Cnty. Ct. C.P. Jan. 27, 2021), State Ct. Compl. ¶¶ 36–47. Mount Vernon failed to provide coverage or defend the state court action which resulted in an entry of default being filed in that action. Compl. ¶¶ 7–8. On February 23, 2022, the state court held a default damages hearing which resulted in a damages award of twenty million dollars being filed against Taco Loco Cantina. Id. ¶ 9.

Mount Vernon issued a liability policy to Taco Loco Cantina on March 20, 2019, with effective dates of March 3, 2019, through March 13, 2020, which provided one million dollars of liquor liability coverage to Taco Loco Cantina. Id. ¶ 10; see also ECF No. 1-8. Lynch believes that Mount Vernon cancelled the Policy at some point without notifying the South Carolina Department of Revenue, in violation of South Carolina Code section 61-2-145. Compl. ¶¶ 12–13. Pursuant to South Carolina common law, the Policy purportedly remained in full force and effect and Mount Vernon is required to immediately pay Lynch one million dollars, which represents the amount of liquor liability coverage on the Policy. Id. ¶¶ 14–17.

Lynch filed the complaint against Mount Vernon on May 16, 2023, seeking a declaratory judgment that the Policy remained in full force and effect on January 8, 2020, and requesting the court order Mount Vernon to pay the judgment of the state court action. ECF No. 1, Compl. On July 18, 2023, Mount Vernon filed the instant motion to dismiss. ECF No. 6. On August 17, 2023, Lynch responded in opposition, ECF No. 9, to which Mount Vernon replied on August 24, 2023, ECF No. 11. The court held a hearing on the motion on September 19, 2023. ECF No. 14. As such, the motion is fully briefed and is now ripe for review.

## II.  STANDARD

### A.  Fed. R. Civ. P. 12(b)(1)

A party challenging the court's subject-matter jurisdiction over a pending action may bring a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1).  Even when a party does not move to dismiss on this ground, the court has the right and obligation to ensure that it possesses subject-matter jurisdiction over every case that comes before it.  Gonzalez v. Thaler, 565 U.S. 134, 141 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider sua sponte issues that the parties have disclaimed or have not presented.").  When a federal court does not possess subject-matter jurisdiction over a claim, it must sua sponte dismiss the claim.  Id.

This court does not have jurisdiction to hear a case if the plaintiff does not have standing.  See Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016).  The "'irreducible constitutional minimum' of standing consists of three elements.  The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  Id. (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)).  If the plaintiff has not "'clearly . . . allege[d] facts demonstrating' each element," there is no standing, and this court is without jurisdiction to decide the case.  Id.

### B.  Fed. R. Civ. P. 12(b)(6)

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint."  Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule

12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief. Mylan Lab'ys, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and should view the complaint in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999); Mylan Lab'ys, 7 F.3d at 1134. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### III.  DISCUSSION

Mount Vernon moves to dismiss the complaint because Lynch purportedly lacks standing to bring this suit and because Lynch has failed to state a plausible claim for relief.[1] ECF No. 6 at 3–6. First, Mount Vernon avers that Lynch lacks standing to sue for more than the one million dollar limit of the Policy because he is not an insured under

---

[1] Mount Vernon does not identify the subsection of Rule 12 of the Federal Rules of Civil Procedure. ECF No. 6 at 1. However, based on the substance of his argument, the court construes his motion as bring brought pursuant to Rule 12(b)(1) (dismissal for lack of subject matter jurisdiction) and Rule 12(b)(6) (dismissal for failure to state a claim upon which relief can be granted).

4

the Policy and therefore the court cannot grant Lynch's request for a declaration that he is entitled to more than the limit of the Policy nor may Lynch assert a cause of action for bad faith failure to settle against Mount Vernon. Id. at 3–4. Second, Mount Vernon claims that South Carolina law does not recognize a private right of action against an insurer for allegedly violating a licensing statute nor does the statute provide penalties against the insurer for its failure to notify the state agency. Id. at 5–6 (citing Denson v. Nat'l Cas. Ins., 886 S.E.2d 228, 229 (S.C. 2023)). The only established penalties that arise from violation of that statute are against the insured-business should it fail to maintain the requisite liquor liability coverage. Id. Certainly, the agency has the authority to sanction an insurer for violating South Carolina Code section 61-2-145, but Mount Vernon claims that Lynch's suggested penalty of resumption of coverage is without merit. Id. Therefore, Lynch cannot craft a cause of action premised on section 61-2-145, because such a cause of action is not recognized under South Carolina law. Id.

In response, Lynch contends that Mount Vernon's objections are without merit. Lynch identifies United States Fidelity & Guaranty Co. v. Security Fire & Indemnity Co., 149 S.E.2d 647 (S.C. 1966) ("USF&G"), to argue that South Carolina precedent supports the proposition that Lynch is entitled to collect the full amount of the judgment. ECF No. 9 at 3. Moreover, Lynch claims his case is distinguishable from the South Carolina Supreme Court's holding that section 61-2-145 does not give rise to a private right of action in Denson., 886 S.E.2d 228, because the instant case involves a direct action by a judgment creditor rather than a negligence action against the business's insured based on

5

the insurer's violation of section 61-2-145.  Id. at 6.  Thus, Lynch concludes that he "has stated a valid cause of action, consistent with controlling South Carolina law."  Id. at 7.

In reply, Mount Vernon highlights that the Policy was cancelled before the underlying accident occurred meaning the underlying judgment in the state court action is not covered by the Policy.  ECF No. 11 at 1.  Mount Vernon also emphasizes the novelty of Lynch's legal argument by explaining that no South Carolina court has adopted the position that an ineffective cancellation means that Lynch, as a judgment creditor, can recover more than the limit of the Policy.  Id.  Thus, Mount Vernon concludes that Lynch's arguments fail for three reasons: (1) the statute does not require notice of cancellation of a policy, only notice of lapse or termination; (2) the effect of failure to comply with the notice requirement does not result in continuation of the Policy; and (3) even if the Policy were still in effect at the time that the accident occurred, Lynch cannot recover more than the Policy limit.  Id. at 1-2.  Moreover, because the language of the statute at issue in the instant case is materially different from the statutory language at issue in USF&G, the holding in USF&G does not apply to the facts of the case.  Id. at 5.  Thus, Mount Vernon urges the court to grant its motion to dismiss for failure to state a claim.

Mount Vernon argues that there is no private cause of action pursuant to section 61-2-145 as the South Carolina Supreme Court clearly explained in Denson, 886 S.E.2d at 229.[2]  ECF No. 6 at 5.  Moreover, it claims that Lynch cannot ground his case on the

---

[2] Lynch purportedly previously filed an action in this court asserting a cause of action against Mount Vernon for violation of this statute.  ECF No. 6 at 5 (citing Case No. 2:23-cv-00058-DCN (D.S.C. Jan. 6, 2023)).  However, upon the Supreme Court's decision in Denson, 886 S.E.2d at 229, Lynch voluntarily dismissed that action.  Id. (referencing Case No. 2:23-cv-00058-DCN, ECF No. 14).

new theory that the cancellation of the Policy was ineffective because Mount Vernon allegedly failed to notify the South Carolina Department of Revenue.  Id.  In response, Lynch argues that his claim is analogous to the permissible claim stated in USF&G such that he has plausibly stated a claim for relief.  ECF No. 9 at 3–6.

Lynch includes a copy of the Policy as an attachment to his complaint.  See ECF No. 1-7.  It specifies that the policy period was from March 13, 2019, until March 13, 2020, and details that each common cause limit under the liquor liability policy is one million dollars.  Id. at 1, 3.  There is no evidence before the court (e.g., email or paper mailing) indicating that the Policy was expressly canceled, and the complaint merely specifies that "[u]pon information and belief, [Mount Vernon] canceled the aforementioned policy."  Compl. ¶ 11.  Also before the court is an email sent from Joseph Gallagher, Assistant Vice President of USLI which stated, "We did not have a policy in force on the loss date for Taco Loco."  ECF No. 1-4.  To reiterate, the accident occurred on January 8, 2020, which is within the period of the Policy unless Mount Vernon cancelled the Policy.  See Compl. ¶ 3.  Both Lynch and Mount Vernon seem to agree that Mount Vernon cancelled the Policy at some point, but neither party specifies, or provides additional information as to, when that cancellation took effect.  See id.; ECF No. 9 at 2 ("[Lynch] acknowledges and does not dispute that Mt. Vernon cancelled the Policy.").  Thus, the court assumes, based on the facts included in Lynch's complaint, that Mount Vernon appropriately cancelled the Policy but failed to provide notice to the appropriate state agency.[3]  Compl. ¶¶ 12–13.

---

[3] Neither party addresses or contends that the cancellation of the Policy was not communicated to Taco Loco Cantina, nor does either party contend that the cancellation itself was ineffective, and the court does not itself consider that issue.

Liquor liability coverage is statutorily mandated for certain establishments that sell alcoholic beverages, and the failure to maintain this coverage constitutes a violation of South Carolina law. See S.C. Code Ann. § 61-2-145(A) (requiring certain businesses to maintain liquor liability insurance coverage of at least $1,000,000). Lynch does not clearly state his causes of action, but rather lists a series of facts before reaching his requested relief. See Compl. ¶¶ 1–18. Thus, the court (and Mount Vernon) are left to infer possible causes of action.

It is unlikely, but possible, that Lynch is bringing a private cause of action for Mount Vernon's violation of section 61-2-145(A).[4] In Denson, The South Carolina Supreme Court held that section 61-2-145 "does not create a private cause of action against an insurer for its failure to report an insured's lapse or termination of liquor liability coverage." 886 S.E.2d at 234. The court did not constrain its decision merely to suits premised on negligence. Id. at 233. But the court broadly noted that "the general rule is that a statute which does not purport to establish civil liability, but merely makes provision to secure the safety or welfare of the public as an entity is not subject to a construction establishing civil liability." Id. (quoting Whitworth v. Fast Fare Mkts. of S.C., Inc., 338 S.E.2d 155, 156 (S.C. 1985)). Lynch's contention that this case meaningfully differs from Denson because it "involves a direct action by a judgment

---

[4] Mount Vernon argues in its reply that it did not, in fact, violate section 61-2-145 because it cancelled the Policy, and the statute only requires notice be sent to the state agency in the event of termination or lapse. ECF No. 11 at 2. It points to USF&G to explain that, "[w]hile both terms refer to the end of coverage under the policy, Cancellation refers to the termination of the policy prior to the end of the policy period, and Termination refers to the expiration of the policy by the lapse of the policy period." 149 S.E.2d at 650. However, a party waives an argument by raising it for the first time in its reply brief, therefore the court need not consider the distinction. See McBurney v. Young, 667 F.3d 454, 470 (4th Cir. 2012), aff'd, 569 U.S. 221 (2013).

creditor" is unavailing because the core holding in Denson still holds that private actors have no statutory right to sue insurers pursuant to section 61-2-145.[5] See ECF No. 9 at 6; Denson, 886 S.E.2d at 235 (noting that the statute does not create an implied private right of action for injured parties against insurers). Thus, if Lynch's cause of action is the foregoing, he lacks the right to sue, and his claims must fail on that account. See Fed. R. Civ. P. 12(b)(1).

Alternatively, it is possible that Lynch grounds his case on the theory that the Policy was never cancelled because Mount Vernon failed to notify the South Carolina Department of Revenue such that Mount Vernon now has an obligation to pay a judgment rendered against the insured. See ECF No. 6 at 5. The argument is innovative but similarly undermined by the clear language in Denson. See 886 S.E.2d at 235. The South Carolina Supreme Court further indicated that "when read as a whole, section 61-2-145 is primarily aimed at regulating the insured's action and secondarily aimed at imposing a reporting requirement on the insurer. This is evidenced by the statute's failure to provide any consequence for the insurer." Id. Thus, it is unclear how Lynch reaches his conclusion that Mount Vernon's cancellation of the Policy was ineffective because it failed to comply with the reporting requirements of section 61-2-145 when the South Carolina Supreme Court has explicitly held that the statute in question "fail[s] to provide any consequence for the insurer." See id. Requiring a policy to remain in force

---

[5] Lynch brought four causes of action against the Taco Loco Cantina in the underlying state court action: negligence, negligence per se, and violations of South Carolina Code sections 61-4-580 and 61-6-2220. See ECF No. 1-3; State Ct. Compl. ¶¶ 36–43. He received a default judgment for twenty million dollars against the Taco Loco Cantina which he is now attempting to collect from Mount Vernon through this action. See Compl. ¶¶ 16–17.

9

after cancellation as a consequence of failing to comply with the statute would constitute a penalty, which is an impermissible reading of the statute in light of Denson.  See id.  Thus, precedent prevents the court from concluding that an insurer's failure to abide by the statute carries with it the penalty of continued coverage for that insurer's insured party.

The court finds that not only the reasoning in Denson, 886 S.E.2d at 235, but also the clear differences between the statutes and analysis in USF&G and the law at issue in this case prevent the court from finding that Mount Vernon's failure to notify requires the liquor-liability Policy to remain in effect past its cancellation until effective notice is given.  See USF&G, 149 S.E.2d at 650–51.  The South Carolina Supreme Court in USF&G found that "[w]hile the statute does not expressly state that the coverage of a certified [compulsory motor vehicle insurance] policy will continue in force if the insurer fails to comply with the notice requirement, such is the clear intent and result of the language used."  Id.  The language of the statute at issue in USF&G, South Carolina Code section 46-702(7)(h), is manifestly distinct from that in section 61-2-145.  Section 46-702(7)(h) provides,

> When an insurance carrier has certified a motor vehicle liability policy under § 46-748 or 46-749, the <u>insurance so certified shall not be cancelled or terminated until at least ten days after a notice of cancellation or termination of the insurance certified shall be filed with the Department</u>, except that a policy subsequently procured and certified shall at 12:01 A.M., on the effective date of its certification, terminate the insurance previously certified with respect to any motor vehicle designated in both certificates.

S.C. Code Ann. § 56-9-20(5)(h) (previously codified at § 46-702(7)(h)) (emphasis added).  Whereas the instant case is premised on section 61-2-145 which states,

> Each insurer writing liquor liability insurance policies or general liability insurance policies with a liquor liability endorsement to a person licensed or permitted to sell alcoholic beverages for on-premises consumption, in

10

> which the person so licensed or permitted remains open to sell alcoholic beverages for on-premises consumption after five o'clock p.m., <u>must notify the department in a manner prescribed by department regulation of the lapse or termination of the liquor liability insurance policy or the general liability insurance policy with a liquor liability endorsement</u>.

S.C. Code Ann. § 61-2-145(C) (emphasis added).  The court in USF&G explained that since section 46-702(7)(h), "provided that the insurance so certified shall not be cancelled or terminated 'until' the notice is given to the Department, it is obvious that the coverage of the policy does not end until after the notice requirements are met."  USF&G, 149 S.E.2d at 651.  No analogous language implying that the insured's coverage shall persist until the insurer provides adequate notice exists in section 61-2-145.  See S.C. Code Ann. § 61-2-145(C).  Lynch's identified similarities between the two statutes—that they require the insured to obtain and maintain continuous liability coverage, that they are designed to protect the general public, that they require the insurer to notify the appropriate state agency—do not overcome the differences in the plain language of the statutes.  See ECF No. 9 at 5.  Thus, USF&G does not permit the court to find that Mount Vernon's purported failure to notify the state agency meant that the Policy remained in effect at the time of the accident.

Moreover, the South Carolina Supreme Court expressly considered and rejected an argument analogous to the one Lynch now presents to the court.  See Fidelity & Cas. Ins. Co. v. Nationwide Ins. Co., 295 S.E.2d 783 (S.C. 1982).  In Fidelity, the court considered an insurance dispute in which the decedent in an automobile accident had uninsured motorist insurance with Nationwide and the driver of the vehicle had previously been insured by Fidelity under a policy which expired approximately a month and a half before the car accident.  Id. at 783–84.  Nationwide sought recovery against Fidelity by asserting that Fidelity "had not effectively terminated its policy since it failed

11

to notify the South Carolina State Highway Department of the expiration of the policy" as was required by the Automobile Reparation Reform Act. Id. at 784. The court found that "[n]othing in this statute specifically states that failure to notify as required continues the policy in effect." Id. at 785. The court reached that conclusion by reviewing the plain language of the statute, which stated, in relevant part, "[e]very insurer writing automobile liability insurance in this State and every provider of other security approved and accepted by the Chief Highway Commissioner in lieu of such insurance shall immediately notify the Chief Highway Commissioner of the lapse or termination of any such insurance or security." Id. at 784 (citing S.C. Code Ann. § 56-11-220 (1974)). The court considered the statute at issue in USF&G, section 56-9-20(7)(h), and contrasted it with contested provisions in section 56-11-220, to conclude that "[t]he legislature could have worded § 56-11-220 to continue the policy in force until proper notification, yet it chose not to do so, indicating an intention to avoid that result." Id. at 785 (citing USF&G, 149 S.E.2d 647).

Thereafter, the South Carolina Court of Appeals relied on Fidelity to hold that even if notice were required, the insurer's "failure to properly notify the Highway Department would not continue the policy in effect . . . absent an explicit statement providing for such effect" in sections 56-10-240 and 56-10-40. Peterson v. W. Am. Ins. Co., 518 S.E.2d 608, 613 (S.C. Ct. App. 1999); cf. Wiedeman v. Canal Ins. Co., 2016 WL 7384162, at *5 (N.D. Ga. Dec. 21, 2016) (applying South Carolina law) (holding that S.C. Code Regs. § 103-176 includes explicit language that indicates an insurance policy under that regulation may be cancelled "only after giving the [South Carolina Office of Regulatory Staff] not less than thirty (30) days [sic] notice"). The statute at issue in the

instant case does not explicitly provide that the insurer's failure to notify the South Carolina Department of Revenue continues the policy in effect until adequate notice is provided to the state agency.  See S.C. Code Ann. § 61-2-145(C).  As such, precedent guides the court to conclude that an insurer's failure to notify the state agency of the lapse or termination of the liquor liability insurance policy on an establishment does <u>not</u> continue the policy in effect until appropriate notice is provided.

To sum it up, Lynch won a default judgment against Taco Loco Cantina for twenty million dollars.  Taco Loco Cantina previously had a liquor liability Policy for one million dollars of coverage with Mount Vernon that both parties agree was cancelled prior to the accident on January 8, 2020.  Mount Vernon failed to notify the appropriate state agency when it cancelled the Policy.  However, nothing in caselaw or the statute can be read to find that defective notice to the state agency means that the Policy remained valid at the time of the accident.  The simple conclusion is that without proof of coverage or an active Policy, Lynch has failed to plausibly state a claim for relief because there is no obligation for Mount Vernon to pay out for a nonexistent Policy.

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** the motion to dismiss.

**AND IT IS SO ORDERED.**

 

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**October 5, 2023**
**Charleston, South Carolina**

14